UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

ARTHEDEUS VANTELLO HIGGINS,

                    Petitioner,                    Case No. 1:14-cv-629

v.                                            Honorable Robert Holmes Bell

MARY BERGHUIS,

                    Respondent.

_____/

**REPORT AND RECOMMENDATION**

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). The Court may *sua sponte* dismiss a habeas action as time-barred under 28 U.S.C. § 2244(d). *Day v. McDonough,* 547 U.S. 198, 209 (2006). After undertaking the review required by Rule 4, I conclude that the petition is barred by the one-year statute of limitations.

**Discussion**

I.      Factual Allegations

Petitioner Arthedeus Vantello Higgins is incarcerated at the West Shoreline Correctional Facility.  Following a jury trial in Kalamazoo County Circuit Court, Petitioner was convicted of first-degree home invasion, Mich. Comp. Laws § 750.110a(2).  The criminal proceedings against him arose from a charge that he broke into an apartment complex in Kalamazoo, Michigan, on June 14, 2009, with intent to commit larceny.  (*See* Br. in Supp. of Pet., docket #2, Page ID#23.)  At trial, his counsel did not dispute the fact that Petitioner forcibly entered the apartment complex without permission.  Instead, he argued that Petitioner did not intend to commit a larceny.  Petitioner summarizes the relevant evidence presented at trial as follows:

> At the time of the break in, one of the co-tenants of the apartment, Tiffany Campbell, was present in the apartment. . . .  Ms. Campbell was asleep in her bedroom in the lower level of the multi-level apartment at around 5:45 a.m. on the 14th. . . .  She woke up when she heard sounds of someone in the bedroom of one of those roommates, which room was directly above hers.  Thinking that this roommate had returned home, Ms. Campbell called her, and found out that that roommate had not returned to the apartment.  Ms. Campbell then tried to contact her other two roommates, but did not reach either.

> She left her room, and discovered the front door to the apartment had been forced open.  Ms. Campbell then called the police on her cell phone, and hid in the closet of one of her roommates' bedroom[s].  When in the closet, she heard someone come into that room.  When she looked out, she saw Petitioner sitting on the bed.  She told him that she had called the police, and that they would be arriving momentarily, but Petitioner did not leave the room, remaining sitting on the bed.  The police arrived within a few minutes and arrested Petitioner while he continued to sit on her roommates' bed.  Ms. Campbell acknowledged that Petitioner did not assault or threaten her at any point of the incident.  She testified that she did not know Petitioner, did not recall ever having seen him before, and did not recognize his name.

> While hiding in the closet, she heard the sounds of the sliding doors on a hallway closet in the apartment being opened.  She did not hear the sounds of Petitioner doing anything else in the apartment.
> When she spoke to Petitioner, she asked him what he was doing in the apartment, but he did not respond to that question.  She then asked him if he knew

anyone who lived in the apartment, and he responded "that it wasn't even like that." When she told him she was on the phone with the police, he responded "I don't want any of that."

After the police arrived and arrested Petitioner, Ms. Campbell went through the apartment with them.  She noticed that the sliding doors to the hallway closet were open, and she believed they had been closed when she went to bed.  She testified that she went through her roommates' bedrooms, but did not see anything that indicated to her that Petitioner had gone through those rooms.  She saw a cupboard door and a door to the pantry in the kitchen open, and she believed those doors also had been closed when she went to bed.  Ms. Campbell estimated that it was only a few minutes between the time she heard the front entry door being broken and Petitioner entering the room where she was hiding.

During cross-examination Ms. Campbell indicated that there was personal property in the apartment, including five televisions, furniture, and art on the walls. When Petitioner came into the room where she was hiding, he did not have any items from the apartment in his hands and was not carrying any bag or other container which could be used to transport items.  He did not demand any items from Ms. Campbell, or ask her for money or jewelry.  He made no effort to get up from the bed or leave the apartment once she told him she had called the police and they were on their way.  When the police arrived, Petitioner called out to them, telling them he was in the room on the lower level.

Ms. Campbell testified that when she walked into the bedroom of her roommate Kasai Dokey, she saw that Ms. Dokey's laptop computer was sitting on her bed, and items from Ms. Dokey's purse were lying on the bed.  She did not see any items belonging to Ms. Dokey in Petitioner's possession.

After the cross-examination, one of the jurors wanted a question asked to Ms. Campbell of whether Petitioner had emptied out Ms. Dokey's purse onto the bed. . . . Judge Lightvoet explained to the jury that she could not ask that question to the witness.

The only other prosecution evidence presented in the case was testimony from Kalamazoo County Police Lt. Kevin Lankart, who was one of the officers dispatched to the apartment at 5:55 a.m.  The front door to the apartment sustained considerable damage.  Lt. Lankart confirmed that when the police were in the apartment, calling out that they were there, a male voice from the lower level responded that "I'm in here."  Petitioner was standing in the bedroom when the police entered, and was immediately arrested.  The officer testified that in his opinion, Petitioner was extremely intoxicated, smelled of alcohol, was "very aloof," and was "obviously under a controlled substance."

(Br. in Supp. of Pet., docket #2, Page ID##23-27 (references to trial transcript omitted).)

In support of his defense, Petitioner presented the testimony of his girlfriend at the time of the offense, Prisila Pantoja. (*Id.* at Page ID#27.) She testified that she was with Petitioner for the entire day on June 13, 2009, and she dropped him off at his aunt's house at around 2:00 a.m. the next morning. He was upset at the time because they had been arguing about their relationship, but she had not seen him drink anything that day. She testified that, on several prior occasions, she had been with him to the apartment complex where the offense occurred, but she did not know where he went after she dropped him off. She did not know why he went to the apartment complex. On further questioning, she acknowledged that she knew Ms. Dokey from school, but she had never been to her apartment with Petitioner.

In his closing and rebuttal arguments, the prosecutor argued that the evidence showed that Petitioner intended to commit a larceny. He stated, "You heard testimony that [Ms. Campbell] went through her roommates' rooms and found items laid out, purse emptied." (*Id.* at Page ID#28.) He argued that the jury could infer intent to commit larceny based on evidence of "breaking into [the] apartment, going through rooms that [Petitioner] had no business going through, going through drawers, going through purses and going through closets." (*Id.* at Page ID#68.) The prosecutor noted that "there was a purse spilled out" and argued that the jury could infer "that these items were touched by [Petitioner] and that [Petitioner] went through the drawers, went through the closet, went through the purse." (*Id.*)

In Petitioner's defense, his counsel argued that the evidence did not show beyond a reasonable doubt that Petitioner committed a larceny. Counsel argued that Petitioner was attempting to locate Ms. Pantoja at the time, but he was intoxicated. Counsel asserted that there was no evidence that Petitioner dumped Ms. Doxey's purse onto the bed, or intended to steal items from the purse.

The jury convicted Petitioner of the charged offense.  On December 7, 2009, Petitioner was sentenced to serve 6 years and 6 months to 30 years of imprisonment.  He appealed the judgment of conviction and sentence to the Michigan Court of Appeals and the Michigan Supreme Court.  The court of appeals affirmed his conviction and sentence on February 17, 2011, and the Michigan Supreme Court denied leave to appeal on July 25, 2011.  He did not file a petition for certiorari with the United States Supreme Court.

On December 28, 2012, Petitioner filed a motion for relief from judgment in state court.  The motion was denied and Petitioner did not appeal that decision.  He filed the instant action on or about June 9, 2014,[1] raising the following claims:

I.      PETITIONER['']S CONVICTION FOR FIRST DEGREE HOME INVASION SHOULD BE VACATED . . . AS THE PROSECUTION FAILED TO PRESENT CONSTITUTIONALLY SUFFICIENT EVIDENCE TO SHOW THE REQUISITE ELEMENT OF INTENT TO COMMIT A LARCENY.

II.     PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY FAILED TO PRESENT ANY EVIDENCE THAT THE COMPLAINANT'S ROOMMATE[] . . . ADMITTED . . . THAT SHE HAD EMPTIED THE CONTENTS OF HER PURSE ONTO THE BED, CONTRARY TO THE PROSECUTION'S ASSERTION AT TRIAL THAT THE CIRCUMSTANTIAL EVIDENCE SHOWED THAT PETITIONER EMPTIED THE PURSE IN AN ATTEMPT TO COMMIT A LARCENY . . . .

III.    TRIAL COUNSEL WAS INEFFECTIVE FOR MAKING OPENING-STATEMENT PROMISES HE DID NOT FULFILL.

---

[1]Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner dated his application on June 9, 2014, and it was received by the Court on June 11, 2014.  Thus, it must have been handed to prison officials for mailing at some time between June 9 and 11.  For purposes of this Report and Recommendation, I have given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

IV.     DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL PETITIONER TO TESTIFY ON HIS OWN BEHALF AT TRIAL IN SUPPORT OF HIS CLAIM THAT HE WAS PRESENT IN THE APARTMENT TO LOOK FOR SOMEONE, AND TO ESTABLISH THAT HE MAY HAVE BEEN GIVEN A DRUG THAT CAUSED HIM TO BE UNABLE TO FORM THE REQUISITE INTENT TO STEAL . . . .

(Br. in Supp. of Pet., docket #2, Page ID##61, 66, 74, 79.)

II.     Statute of Limitations

Petitioner's application is barred by the one-year statute of limitations provided in

28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and

Effective Death Penalty Act, PUB. L. NO. 104-132, 110 STAT. 1214 (AEDPA).  Section 2244(d)(1)

provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year

limitations period is measured.  Under that provision, the one-year limitations period runs from "the

date on which the judgment became final by the conclusion of direct review or the expiration of the

time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  Petitioner appealed his conviction to

the Michigan Court of Appeals and the Michigan Supreme Court.  The Michigan Supreme Court

denied his application on July 25, 2011.  Petitioner did not petition for certiorari to the United States

Supreme Court.  The one-year limitations period, however, did not begin to run until the ninety-day

period in which Petitioner could have sought review in the United States Supreme Court had

expired.  *See Lawrence v. Florida*, 549 U.S. 327, 332-33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280,

283 (6th Cir. 2000).  The ninety-day period expired on Monday, October 24, 2011.  Thus, he had

one year from that date, until October 24, 2012, to file his petition for habeas corpus relief.

Obviously, he filed more than one year after that date.  Consequently, absent tolling, his petition is

time-barred.

Petitioner asserts that he filed a motion for relief from judgment in state court on

December 28, 2012, which was denied on January 9, 2013.  (*See* Pet. 3, 5; docket #1.)  The running

of the statute of limitations is tolled when "a properly filed application for State post-conviction or

other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C.

§ 2244(d)(2).  In Petitioner's case, however, the statute of limitations had already run by the time

that he filed his motion.  The tolling provision does not "revive" the limitations period (i.e., restart

the clock); it can only serve to pause a clock that has not yet fully run.  *Payton v. Brigano*, 256 F.3d

405, 408 (6th Cir. 2001).  Once the limitations period is expired, collateral petitions can no longer

serve to avoid a statute of limitations.  *Id.*; *McClendon v. Sherman*, 329 F.3d 490, 493 (6th Cir.

2003).  Even where the post-conviction motion raises a claim of ineffective assistance of appellate

counsel, the filing of the motion for relief from judgment does not revive the statute of limitations.

*See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (citing *McClendon*, 329 F.3d at 490).  Thus,

Petitioner's motion for relief from judgment did not toll the limitations period.

The one-year limitations period applicable to § 2254 is also subject to equitable

tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010); *Akrawi v. Booker*, 572 F.3d 252, 260 (6th

Cir. 2009); *Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005). A petitioner bears the burden of

showing that he is entitled to equitable tolling. *See Keenan*, 400 F.3d at 420; *Allen*, 366 F.3d at 401.

The Sixth Circuit repeatedly has cautioned that equitable tolling should be applied "sparingly" by

this Court. *See, e.g., Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011);

*Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581, 588

(6th Cir. 2009). A petitioner seeking equitable tolling of the habeas statute of limitations has the

burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that

some extraordinary circumstance stood in his way." *Holland*, 560 U.S. at 649 (citing *Pace v.

DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Lawrence*, 549 U.S. at 335; *Hall*, 662 F.3d at 750; *Akrawi*,

572 F.3d at 260.

Petitioner has failed to raise equitable tolling or allege any facts or circumstances that

would warrant its application in this case. The fact that Petitioner is untrained in the law, was

proceeding without a lawyer, or may have been unaware of the statute of limitations for a certain

period does not warrant tolling. *See Allen*, 366 F.3d at 403-04; *see also Craig v. White*, 227 F.

App'x 480, 482 (6th Cir. 2007); *Harvey v. Jones*, 179 F. App'x 294, 299-300 (6th Cir. 2006); *Martin*

*v. Hurley*, 150 F. App'x 513, 516 (6th Cir. 2005); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir.

1999) ("[I]gnorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse

[late] filing."). Accordingly, Petitioner is not entitled to equitable tolling of the statute of

limitations. Therefore, his petition is untimely.

III.    Actual Innocence

In *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931-32 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception. The actual-innocence claim in this context is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id.* at 315 (quoting *Herrerra v. Collins*, 506 U.S. 390, 404 (1993)). In order to make a showing of actual innocence under *Schlup*, Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [him].'" *McQuiggin*, 133 S. Ct. at 1935 (quoting *Schlup*, 513 U.S. at 327); *see also Schlup*, 513 U.S. at 329 (explaining that its standard "requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do"). The Supreme Court has stressed that the *Schlup* standard is "demanding"; it should open the gateway "'only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial.'" *McQuiggin*, 133 S. Ct. at 1936 (quoting *Schlup*, 513 U.S. at 316). A credible claim of actual innocence requires "new reliable evidence . . . that was not presented at trial." *House v. Bell*, 547 U.S. 518, 537 (2006) (internal quotation marks omitted). To evaluate the claim, the Court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.* at 538 (internal quotation marks omitted).

Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of

the claim in determining the credibility of the evidence of actual innocence.  *McQuiggin*, 133 S. Ct.
at 1936.

Petitioner claims actual innocence based on evidence that his attorney failed to
present at trial: the police report in which Ms. Doxey acknowledged that she dumped the contents
of her purse onto her bed before Petitioner arrived at the apartment.  Petitioner does not contest the
fact that he broke and entered a dwelling when another person was lawfully present.  Instead, he
argues that he did not intend to commit a "felony, larceny or assault" in the dwelling.  *See* Mich.
Comp. Laws § 750.110a(2).  Petitioner and his counsel made reference to the police report at the
sentencing hearing.  (*See* Br. in Supp. of Pet., docket #2, Page ID#70.)  In response, the prosecutor
denied making any argument that Petitioner had dumped the contents of the purse onto the bed, but
reiterated that it was possible that he could have rummaged through the purse because he had the
opportunity to do so.  (*See id.* at Page ID#71.)

On appeal from his conviction, Petitioner argued that the evidence presented at trial
was not sufficient to demonstrate his intent, and that his attorney provided ineffective assistance by
failing to present relevant evidence regarding his intent.  The court of appeals addressed these claims
as follows:

> To convict defendant of first-degree home invasion, the prosecution was
> required to prove beyond a reasonable doubt that (1) defendant broke and entered a
> dwelling, (2) when entering, he intended to commit a felony, larceny, or assault, and
> (3) another person was lawfully present in the apartment. MCL 750.110a(2)(b);
> *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010). Defendant contends that
> the prosecution failed to present sufficient evidence that he intended to commit a
> felony, larceny, or assault while in the apartment.
>
> Because of the difficulty in proving a defendant's state of mind, minimal
> circumstantial evidence is sufficient to establish the defendant's intent. *People v
> Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). A defendant's intent may
> be proved by the nature, time, and place of the defendant's acts before and during the
> breaking and entering. *People v Uhl*, 169 Mich App 217, 220; 425 NW2d 519

- 10 -

(1988). Here, defendant kicked in the door to the apartment at 5:45 a.m. The victim testified that she heard defendant walking throughout the apartment, including her roommate's bedroom, and opening the doors to a large closet in the hallway. After the police arrived and defendant was taken into custody, the victim walked through the apartment with one of the officers and discovered that defendant had also opened one cabinet in the kitchen, as well as the pantry door. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that defendant intended to commit a larceny. Defendant's conviction is supported by sufficient evidence.

Defendant also argues that defense counsel was ineffective because counsel failed to present evidence that the victim's roommate admitted that she emptied the contents of her purse onto her bed. We disagree. Because an evidentiary hearing has not been held on defendant's claim, our review is limited to the record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

To establish a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000). Judicial scrutiny of counsel's performance must be highly deferential. *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed2d 674 (1984). Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be taken in difficult cases. *People v Pickens*, 446 Mich 298, 325, 521 NW2d 797 (1994).

In the instant case, defense counsel allowed the jury to hear evidence of the purse based on a strategic decision. The purse was not mentioned by the victim, nor inquired of by the prosecutor, during direct examination. It was during cross-examination that defense counsel asked the victim if a laptop computer and items from the purse were laying in plain view. When the victim confirmed that they were, defense counsel then inquired whether any of the items were taken by defendant or otherwise "disturbed" in any way. After the victim answered "no," defense counsel went on to inquire whether there were other personal items that defendant had an opportunity to steal but did not. Defense counsel strategically focused on the fact that, although defendant had the opportunity to steal items, he took nothing from the apartment. This was a matter of trial strategy, and will not be second-guessed by this Court. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Defendant was not denied the effective assistance of counsel.

*People v. Higgins*, No. 295675, slip op. at 1-2 (Mich. Ct. App. Feb. 17, 2011).

Petitioner has failed to make the showing required by *Schlup*. At the outset, I note

that Petitioner does not offer the evidence in support of his claim of innocence. He has not provided

a copy of the police report in which Ms. Doxey admitted that she emptied the contents of the purse onto her bed, or any other evidence that would demonstrate his innocence.

Even if the Court were to accept Petitioner's *representations* about the contents of the police report, and even if the Court were to accept it as "new" evidence,[2] it would not be adequate to satisfy the *Schlup* standard.  As Petitioner acknowledges in his brief, the evidence presented at trial showed the following: he entered an apartment at 5:45 in the morning by breaking through the door; a resident heard him opening doors and moving through her apartment; and the resident discovered that he had opened a door to the hallway closet, a door to a kitchen cabinet, and a door to the kitchen pantry.  As indicated *supra*, the state court concluded that a jury *could* convict Petitioner on the latter evidence alone; in other words, the foregoing evidence was sufficient to convict him even without an inference that he handled the purse.[3]  Although "'the mere existence of sufficient evidence to convict' [is not] outcome determinative," *Bradshaw*, 693 F.3d at 633, I cannot conclude that Petitioner's new evidence would make it "more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Petitioner's new evidence discounts only one of several similar facts suggesting that he intended to commit a larceny.  In other words, even if he did not empty the purse onto the bed (to search its contents), he did search several

---

[2]The Sixth Circuit has declined to resolve whether "the 'new' evidence required under *Schlup* includes only newly discovered evidence that was *not available* at the time of trial, or broadly encompasses all evidence that was *not presented to the fact-finder* during trial, *i.e.*, newly presented evidence."  *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012) (emphasis added).

[3]In one of his grounds for relief, Petitioner asserts that the evidence presented was constitutionally inadequate to demonstrate intent, but I do not discern any error in the state court's disposition of this claim.  Moreover, the AEDPA "commands deference at two levels" in this context:  First, deference should be given to the trier-of-fact's verdict, as contemplated by [*Jackson v. Virginia*, 443 U.S. 307, 319 (1979)]; second, deference should be given to the Michigan [appellate court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).

other areas inside the dwelling without an apparent justification for doing so.[4]  Moreover, he did so

in the early hours of the morning, after breaking through the door.  Considering all the foregoing,

I conclude that Petitioner has not made the requisite showing under *Schlup*.  Because Petitioner has

failed to establish his actual innocence, he is not excused from the statute of limitations under 28

U.S.C. § 2244(d)(1).  Consequently, his habeas petition is time-barred.

The Supreme Court has directed the District Court to give fair notice and an adequate

opportunity to be heard before dismissal of a petition on statute of limitations grounds.  *See Day,*

547 U.S. at 210.  This report and recommendation shall therefore serve as notice that the District

Court may dismiss Petitioner's application for habeas corpus relief as time-barred.  The opportunity

to file objections to this report and recommendation constitutes Petitioner's opportunity to be heard

by the District Judge.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied

because it is barred by the one-year statute of limitations.  I further recommend that a certificate of

appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated:  October 10, 2014                         /s/ Phillip J. Green
                                                 Phillip J. Green
                                                 United States Magistrate Judge



### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of

---

[4]In one of the other grounds for relief presented in the petition, Petitioner asserts that he should have been allowed to testify on his own behalf to provide an explanation for his actions.  His explanation does little to help his case, however. He asserts that he was searching for his girlfriend, but that would not explain why he forcibly entered the victim's apartment and started opening closets and kitchen cabinets.

service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).